UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

AGFA PHOTO USA CORPORATION,      )
                                 )
        *Plaintiff,*             )
*v.*                             )          No.1:06-cv-216
                                 )          *Edgar*
FRED PARHAM, individually and d/b/a  )
PRO-PHOTO 1 HOUR & CUSTOM LAB    )
and d/b/a PRO-PHOTO IMAGING,     )
                                 )
        *Defendant.*             )

## MEMORANDUM

Plaintiff Agfa Photo USA Corporation ("Agfa Photo") brings a motion to dismiss the affirmative defenses and counterclaim of Defendant Fred Parham, individually and d/b/a Pro-Photo 1 Hour & Custom Lab and d/b/a Pro-Photo Imaging ("Pro-Photo"). [Court Doc. No. 17]. Pro-Photo opposes the motion. [Court Doc. No. 19]. Pro-Photo also moves to stay this action, and Agfa Photo opposes the motion to stay. [Court Doc. Nos. 10, 16].

The Court has reviewed the relevant pleadings and applicable law relating to this motion and has determined that Agfa Photo's motion to dismiss will be GRANTED IN PART and DENIED IN PART. Pro-Photo's motion to stay will be DENIED.

## I.      Background

Agfa Photo filed its initial complaint on September 8, 2006 in the Chancery Court of Hamilton County, Tennessee claiming breach of contract against Pro-Photo. [Court Doc. Nos. 1-3, 1-1]. Pro-Photo removed the case to this Court on October 10, 2006 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. [Court Doc. No. 1-1].

Agfa Photo's complaint alleges that beginning in October 2003, Pro-Photo leased photo processing equipment from Agfa Corporation. Agfa Photo alleges that Pro-Photo and Agfa Corporation, a predecessor to Agfa Photo, entered into a lease agreement ("Lease Agreement") on October 14, 2003. Agfa Photo further alleges that Pro-Photo breached the Lease Agreement by failing to pay its monthly lease payments. It contends that due to Pro-Photo's breach of the Lease Agreement, all payments due to Agfa Corporation under the Lease Agreement have been accelerated by its terms and are due and payable immediately. Agfa Photo asserts that Agfa Corporation assigned all of its rights and interest under the Lease Agreement to Agfa Photo. Agfa Photo seeks its payments under the Lease Agreement, as well as prejudgment interest, attorneys' fees, costs, and possession of its equipment and assets.

The Lease Agreement attached to Agfa Photo's complaint was almost illegible due to the font size of its provisions. The record is unclear whether the attached Lease Agreement represents the exact size of the Lease Agreement signed by the parties. This Court magnified the size of the attached Lease Agreement to render its provisions legible.

The Lease Agreement states that it "CORRECTLY SETS FORTH THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE WITH RESPECT TO THE USE, POSSESSION AND LEASE OF THE EQUIPMENT" and that "NEITHER PARTY SHALL BE BOUND BY ANY STATEMENT NOT CONTAINED IN THIS AGREEMENT." [Court Doc. No. 1-3, Lease Agreement]. It provides that in exchange for the use of certain leased photography development equipment, Pro-Photo will pay Agfa Corporation sixty monthly payments of $3,773.04 each for a total price of $218,347.45.

The Lease Agreement contains many other provisions, mostly written to benefit Agfa

Corporation and its assignees. It is unclear whether the parties negotiated any specific terms of the Lease Agreement or whether Pro-Photo obtained an attorney to aid in reviewing the Lease Agreement. The Lease Agreement states that "Lessor may assign or transfer this Agreement and Lessee waives notice of any such assignment. Lessee hereby waives any and all claims, setoffs, and defenses whatsoever against Lessor's assignee." Lease Agreement, ¶ 8.

The Lease Agreement also excludes several warranties and states:

> LESSEE LEASES THE EQUIPMENT "AS IS." LESSOR MAKES NO WARRANTY OR REPRESENTATION EITHER EXPRESS OR IMPLIED AS TO THE DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE EQUIPMENT, ITS MATERIAL, OR ITS WORKMANSHIP. LESSOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE OR AS TO ITS TITLE TO THE EQUIPMENT OR ANY COMPONENT THEREOF, OR AS TO ANY OTHER MATTER. LESSEE AGREES THAT ALL SUCH RISK AS BETWEEN LESSOR AND LESSEE, ARE TO BE BORNE BY LESSEE, AND THE BENEFITS OF ANY AND ALL IMPLIED WARRANTIES OF LESSOR ARE HEREBY WAIVED.

Lease Agreement, ¶ 10. The Lease Agreement further states that:

> To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Article 2A of the Uniform Commercial Code as adopted in any jurisdiction, including but not limited to Lessee's rights to: (a) cancel this Lease; (b) repudiate this Lease; (c) reject the Equipment; (d) revoke acceptance of the Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason . . .

*Id.*, ¶ 12. Upon default of the Lease, including failing to make a monthly payment, the Lease Agreement provides that "the entire amount of rent remaining to be paid over the balance of the lease term of all Equipment from the date of default, shall become immediately due and payable . . . . *Id.*, ¶ 17. The Lease Agreement further provides that it should be interpreted in accordance with the laws of Massachusetts. *Id.*, ¶ 24.

On October 25, 2006 Pro-Photo filed its answer to the complaint. [Court Doc. No. 2].

The answer also states counterclaims against Agfa Photo and raises eighteen separate affirmative defenses, including unconscionability, unenforceability of the Lease Agreement as a contract of adhesion, and fraud in the inducement. *Id.*

In its answer Pro-Photo alleges that it is a small photography business involving unsophisticated principals. It further contends that Agfa Photo entered into a warranty agreement with Pro-Photo. However, the Agfa Limited Equipment Warranty attached to the counterclaim only provides a warranty for a period of either six months or twelve months from the date of installation, depending on the equipment model. [Court Doc. No. 2-2]. The Limited Equipment Warranty attached to the counterclaim also does not specifically state that it applies to Pro-Photo. Pro-Photo contends in its counterclaim that "AGFA Corporation made Pro-Photo aware of extended warranty service that would be available to maintain the Equipment" and that Pro-Photo entered into a further extended service agreement with AGFA Corporation, but that its leased equipment never performed adequately to serve Pro-Photo's business needs. [Court Doc. No. 2]. Despite these allegations Pro-Photo did not attach a copy of any additional service agreement to its counterclaim, and it further admits in its opposition briefing to the motion to dismiss that Pro-Photo could not maintain an additional service maintenance agreement and that "[a]dmittedly, Pro-Photo was no longer being serviced by a formal service maintenance agreement and received its maintenance on a pay as you go basis." [Court Doc. No. 19, p. 11].

Pro-Photo alleges that it relied on Agfa Corporation's representations that it would service its equipment pursuant to an extended warranty agreement or on a cost per service basis that would be less than the market price for such services. Pro-Photo alleges that the

representations regarding the service agreement or extended warranty were essential to its willingness to enter into the Lease Agreement and such a service agreement was essential to the value of the leased equipment. Pro-Photo alleges that Agfa Corporation and its successors breached their obligations under the alleged extended service agreement.

The counterclaim also alleges that Agfa Corporation engaged in a conspiracy with other business entities, including Agfa Photo and two entities known as Leaf Financial Corp. and LEAF Funding, Inc. (collectively "LEAF entities"), relating to Agfa Corporation's lease agreements with photography development businesses across the country. The alleged conspiracy involved selling the rights to collect money under the lease agreements while avoiding any continuing obligation to provide ongoing maintenance and servicing of the leased equipment. [Court Doc. No. 2, Answer and Counterclaim]. Pro-Photo asserts that Agfa Corporation transferred its lease agreements to Agfa Photo on November 2, 2004 and "initiated a scheme to raise cash by selling the Lease Agreements free and clear of obligations under the Service Maintenance Agreements." *Id.* at ¶ 44. However, Pro-Photo has not joined any of the other alleged conspirators to this action.

Pro-Photo alleges that the actions of Agfa Corporation and Agfa Photo have rendered its equipment valueless and that, as a consequence, it has suffered lost sales and profits. Pro-Photo brings counterclaims against Agfa Photo for declaratory judgment regarding its rights under the Lease Agreement. Pro-Photo seeks a declaration from this Court that Agfa Photo and/or its predecessors breached the Lease Agreement and were parties to fraud, that the Lease Agreement is unenforceable and must be cancelled or rescinded, that Pro-Photo owes Agfa Photo no damages, and that Agfa Photo owes Pro-Photo damages. Pro-Photo also brings a claim of

revocation of acceptance of goods pursuant to the Uniform Commercial Code, as adopted by Tennessee law, breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of merchantability under Tennessee law, violation of the implied warranty of fitness for particular purpose under Tennessee law, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq.* ("TCPA").

In support of its counterclaims, Pro-Photo has attached several documents to its answer and counterclaim. These documents include: a document purporting to be an Agfa Limited Equipment Warranty provided to Pro-Photo; a letter from Agfa Corporation to an unspecified customer regarding divestiture of its photo activities; a letter from Agfa Photo to an unspecified customer regarding the insolvency of Agfa Photo's German parent company; a letter from Agfa Photo's President and CEO to an unspecified customer regarding the sale of that customer's lease agreement to LEAF Funding, Inc.; a letter from Agfa Photo's President and CEO to an unspecified customer regarding a new service and parts provider for Agfa Photo equipment; a purchase agreement between Agfa Photo and LEAF Funding, Inc. regarding the sale of leases other than the Lease Agreement to LEAF Funding, Inc.

This Court has already entered an order, agreed upon by the parties, facilitating the return of the leased equipment to Agfa Photo. [Court Doc. No. 18]. Agfa Photo has moved to dismiss Pro-Photo's affirmative defenses and counterclaim. [Court Doc. 17]. Pro-Photo has moved to stay this action due to a parallel putative class action lawsuit filed in United States District Court in Massachusetts. [Court Doc. No. 10].

## II.    Analysis

## A.    Motion to Stay

A district court maintains discretion to stay pending proceedings. *See Wilson v. Unum Life Ins. Co. of America*, No. 3:03-0070, 2004 WL 2757914 *3 (M.D. Tenn. Jan. 22, 2004). Further, " 'the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants.'" *Ohio Envtl. Council v. United States District Court, Southeastern Dist. of Ohio*, 565 F.2d 393, 396 (6th Cir. 1977) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).   The Sixth Circuit has determined that "[a] party seeking a stay of proceedings must show (1) that there is a pressing need for delay; and (2) neither the opposing party nor the public will suffer harm from the imposition of a stay." *Wilson*, 2004 WL 2757914 at *3 (citing *Ohio Envtl. Council*, 565 F.2d at 396).  A moving party must show irreparable harm if the case is not stayed. *Wilson*, 2004 WL 2757914 at *3.  The Sixth Circuit has also cautioned that "a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council*, 565 F.2d at 396.

Pro-Photo argues that its counterclaim is similar to the claims being launched by a putative class against Agfa Photo and others in district court in Massachusetts.  It contends that litigating those issues in this forum and in Massachusetts would be duplicative and a waste of resources.  It further asserts that it does not have the resources individually to launch discovery into the wide-ranging conspiracy that it alleges in its counterclaim.

This Court notes, however, that Pro-Photo has given this Court no indication of the

current status of the Massachusetts action. There is no evidence in the record that the group of photography shop businesses have been granted class status pursuant to Federal Rule of Civil Procedure 23 in the Massachusetts lawsuit. Nor has Pro-Photo responded to Agfa Photo's assertion that Pro-Photo may not be a member of any potential class because its Lease Agreement was not sold to the LEAF entities. Pro-Photo asserts that it will suffer irreparable harm if this case proceeds because it is not in a position financially to demonstrate the validity of its counterclaim. This Court disagrees that this alleged hardship constitutes irreparable harm. Pro-Photo has not demonstrated a valid class action proceeding of which it is a member, and it is not Agfa Photo's fault that Pro-Photo has attempted to launch wide-ranging counterclaims that it is not prepared to prove in this Court.

Even if this Court were to find that Pro-Photo has demonstrated irreparable harm, the Court concludes that Pro-Photo has not demonstrated the second prong of the test that Agfa Photo will not suffer harm by the stay. Although the parties have agreed to the return of Agfa Photo's equipment, Agfa Photo also seeks damages pursuant to the alleged breach of the Lease Agreement. Agfa Photo contends that if this Court stays this action, it will have no way of seeking a remedy for Pro-Photo's breach because its claims against Pro-Photo are not at issue in the Massachusetts action. Therefore, Agfa Photo will be harmed by the stay because it will have no way of seeking redress for the alleged breach of the Lease Agreement. Because Pro-Photo has failed to demonstrate that Agfa Photo will not be harmed by the grant of a stay of these proceedings, Pro-Photo's motion to stay will be DENIED.

**B.      Motion to Dismiss**

**1.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In

reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

"must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*,

108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir.

1996)).  In addition, a court must construe all allegations in the light most favorable to the

plaintiff.  *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th

Cir. 1991)).  The Supreme Court has recently explained "an accepted pleading standard" that

"once a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, __ U.S. ___,

127 S.Ct. 1955, 1969 (2007).  The complaint "must contain either direct or inferential allegations

with respect to all material elements necessary to sustain a recovery under some viable legal

theory."  *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.

1993)).

**2.      Declaratory Judgment**

Pro-Photo seeks a declaratory judgment from this Court pursuant to the Declaratory

Judgment Act: (1) that Agfa Photo and/or its predecessors in interest breached the Lease

Agreement; (2) that Agfa Photo and/or its predecessors in interest were parties to fraud against

Pro-Photo; (3) that the Lease Agreement is not enforceable; (4) that the Lease Agreement must

be cancelled or rescinded; (5) that Pro-Photo owes Agfa Photo no damages; and (6) that Agfa

Photo owes Pro-Photo damages for its claims and the devaluation of the leased equipment.

The Declaratory Judgment Act, 28 U.S.C. § 2201, states, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Sixth Circuit has determined that "declaratory judgments are favored when (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Chambliss-Khadair v. GE Lighting and GE Lamp Plant*, No. 1:06cv961, 2007 WL 108453 *3 (N.D. Ohio Jan. 9, 2007) (citing *Grand Trunk W.R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325-26 (6th Cir. 1984)).

The Court notes that Massachusetts law provides the relevant substantive contract law in this action. A federal court sitting in diversity jurisdiction applies the choice-of-law provisions of the forum state. *NILAC International Marketing Group v. Ameritech Services*, 362 F.3d 354, 358 (6th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee law regarding contract claims requires that courts apply the law of the state that the parties intended to govern the contract. *See Chromalox, Inc. v. Georgia Oven*, No. 3:06-0546, 2007 WL 221834 *3 (M.D. Tenn. Jan. 25, 2007) (citing *Godwin Bros. Leasing, Inc. v. H&B, Inc.*, 597 S.W.2d 303 (Tenn. 1980)). In this case the Lease Agreement clearly states that Massachusetts law should apply. Thus, this Court will apply the law of Massachusetts to Pro-Photo's breach of contract claims.

Under Massachusetts law "[t]he essential elements of a cause of action for breach of contract are the existence of a valid agreement, a breach of that agreement, and harm that results from that breach." *Waters v. Earthlink, Inc.*, No. Civ.A.2001-00628, 2006 WL 1549685 *6 (Mass. Super. May 10, 2006) (citing *Singarella v. Boston*, 342 Mass. 385, 387 (1959)). To state a cause of action for breach of contract, Pro-Photo must allege a breach of a relevant provision of the Lease Agreement. The Court recognizes that the Lease Agreement is extremely one-sided in favor of Agfa Photo; however, unfortunately for Pro-Photo, this is the Lease Agreement it signed. The original Lessor was Agfa Corporation, which is not a party to this action. Pro-Photo does not allege that Agfa Corporation specifically breached a provision of the Lease Agreement; the counterclaim merely alleges a breach of representations relating to a duty to service the equipment at a reduced market price. However, the Lease Agreement clearly states that it "SETS FORTH THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE" and that "NEITHER PARTY SHALL BE BOUND BY ANY STATEMENT NOT CONTAINED IN THIS AGREEMENT." [Court Doc. No. 1-3, Lease Agreement]. The Lease Agreement also states that "LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS, SERVICE OR DEFECTS IN EQUIPMENT OR OPERATION THEREOF."

In addition, upon review of the Lease Agreement, it does not appear that Agfa Photo, as the assignee of Agfa Corporation, owed Pro-Photo many duties under the Lease Agreement. There are few, if any, provisions under the Lease Agreement Agfa Photo could have breached. Pro-Photo's counterclaim does not assert a breach of any provision of the actual Lease Agreement by Agfa Photo. Therefore, this Court will DISMISS Pro-Photo's action for declaratory judgment regarding Agfa Photo's alleged breach of the Lease Agreement.

Pro-Photo also seeks a declaration that Agfa Photo was a party to fraud. Federal Rule of Civil Procedure 9(b) provides that "the circumstances constituting fraud . . . shall be stated with particularity." Fed.R.Civ.P. 9(b). The "Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). In addition, "[t]he failure to identify specific parties, contracts, or fraudulent acts requires dismissal." *Yuhasz*, 341 F.3d at 564. Although Rule 9(b)'s requirement of particularity must be read together with Rule 8's requirement of a "short and plain statement," "'at a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud.'" *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

In this action Pro-Photo's counterclaim alleges fraud, but does not provide any specific details of the alleged fraud. Pro-Photo does not allege the who, what, when, where and how of any alleged fraud. Further, Pro-Photo's allegations of fraud appear to relate to Agfa Photo's sale of various lease agreements to the LEAF entities; however, Pro-Photo admits that its Lease Agreement was not one of those sold to the LEAF entities. Pro-Photo provides no specific details on who engaged in fraud with respect to its Lease Agreement, what those individuals said, when and where the conversations occurred, and how the alleged misrepresentations were fraudulent. Further, even if Pro-Photo provides specific details regarding Agfa Photo's alleged conspiracy with the LEAF entities to deceive the photo shops listed on the purchase agreement

with LEAF, those details will not demonstrate how Pro-Photo was harmed because Agfa Photo did not sell the Lease Agreement to the LEAF entities. Without any specific details or allegations demonstrating how Pro-Photo was individually harmed by any alleged conspiracy, Pro-Photo's declaratory judgment claim relating to fraud fails to comply with Rule 9(b)'s requirement of particularity. However, the Court will not take any action regarding this claim at this time. Pro-Photo will have until July 5, 2007 to amend its answer and counterclaim to state its claim for fraud with particularity. If Pro-Photo fails to comply with Rule 9(b)'s requirement of particularity, this Court will dismiss the fraud claim with prejudice.

Pro-Photo also seeks a declaration that the Lease Agreement is unenforceable, that the Lease Agreement should be cancelled, that Pro-Photo owes Agfa Photo no damages, and that Agfa Photo owes Pro-Photo damages. Massachusetts law recognizes such grounds as unconscionability for determining a contract unenforceable. *See e.g. Miller v. Cotter*, 863 N.E.2d 537, 545 (Mass. 2007); *Zapatha v. Dairy Mart, Inc.*, 408 N.E.2d 1370, 1375-76 (Mass. 1980). In addition, the Uniform Commercial Code ("U.C.C"), as adopted under Massachusetts law, recognizes unconscionability as a means of rendering a contract void. *See Zapatha*, 408 N.E.2d at 1375-76. To determine whether a contract is unconscionable, courts pay "particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Id.* at 1376.

In this action the Court is not prepared to say that the set of facts as alleged by Pro-Photo, combined with the harshness of the provisions of the Lease Agreement and its potentially illegible type, could not possibly demonstrate a claim of unconscionability. Therefore, this Court will DENY Agfa Photo's motion to dismiss Pro-Photo's declaratory judgment actions

pertaining to enforceability, cancellation of the Lease Agreement, and damages owed under the Lease Agreement.

### 3. Revocation of Acceptance of Goods

Pro-Photo brings a claim for revocation of the acceptance of goods pursuant to the U.C.C., as adopted under Tennessee Law, Tenn. Code Ann. §§ 2A-508, 517. As discussed *supra*, the law of Massachusetts governs the Lease Agreement because the Lease Agreement contains a choice-of-law provision indicating that Massachusetts law governs disputes regarding the Lease Agreement.

However, even if Pro-Photo had brought this cause of action pursuant to Massachusetts law, this claim must be dismissed because the parties specifically agreed that Pro-Photo waived the right to bring a claim for revocation of the acceptance of goods. The Lease Agreement states that "[t]o the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Article 2A of the Uniform Commercial Code as adopted in any jurisdiction, including but not limited to Lessee's rights to . . . (d) revoke acceptance of the Equipment . . . ." [Court Doc. No. 1-3, Lease Agreement, ¶ 12]. The Massachusetts' version of the U.C.C. provides that parties may vary the effects of the U.C.C. by agreement. Mass. Gen. Laws ch. 106 § 1-102(3). Therefore, Pro-Photo's claims for revocation of acceptance of goods will be DISMISSED. Agfa Photo's motion to dismiss this claim will be GRANTED.

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, every contract "is subject, to some extent, to an implied covenant of good faith and fair dealing." *Ayash v. Dana-Farber Cancer Institute*, 822 N.E.2d 667, 683 (Mass. 2005) (citing *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806 (Mass.

1991)).  However,

> [t]his implied covenant may not be 'invoked to create rights and duties not
> otherwise provided for in the existing contractual relationship,' but rather
> concerns the manner of performance.  It has been explained that the implied
> covenant exists so that the objectives of the contract may be realized.  The
> concept of good faith and fair dealing in any one context is shaped by the nature
> of the contractual relationship from which the implied covenant derives.  The
> scope of the covenant is only as broad as the contract that governs the particular
> relationship.

*Ayash*, 822 N.E.2d at 684 (quoting *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 805

N.E.2d 957 (Mass. 2004) and citing *Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d

1, 10 (1st Cir. 1994)).  The implied covenant of good faith and fair dealing generally provides

that "neither party will do anything to deprive the other of the fruits of the contract." *Prozinski*

*v. Northeast Real Estate Serv., LLC*, 797 N.E.2d 415, 423 n.7 (Mass. App. Ct. 2003) (citing

*Fortune v. National Cash Register Co.*, 364 N.E.2d 1251, 1256 (1977)).

Massachusetts' version of the U.C.C. incorporates this concept as well.  *See* Mass. Gen.

Laws ch. 106 § 1-203.  In addition, Massachusetts law provides that:

> The effect of provisions of this chapter may be varied by agreement, except as
> otherwise provided in this chapter and *except that the obligations of good faith,*
> *diligence, reasonableness and care prescribed by this chapter may not be*
> *disclaimed by agreement* but the parties may by agreement determine the
> standards by which the performance of such obligations is to be measured if such
> standards are not manifestly unreasonable.

Mass. Gen. Laws ch. 106 § 1-102(3) (emphasis added).

Although the Lease Agreement expressly excludes implied warranties and uses such

terms as "as is," Massachusetts law provides that the duty of good faith cannot be disclaimed by

agreement.  Pro-Photo's counterclaim alleges enough facts regarding Agfa Photo's alleged

breach of good faith and fair dealing to survive Agfa Photo's motion to dismiss.  Pro-Photo

alleges that the equipment leased under the Lease Agreement never worked properly, presumably even during the six or twelve month limited warranty period. Although the Lease Agreement is extremely one-sided in favor of Agfa Photo, Pro-Photo's counterclaim at least raises the possibility that Agfa Corporation, by assigning all of its rights to Agfa Photo, and Agfa Photo deprived Pro-Photo of a basic premise of the Lease Agreement–that the equipment would be of some value to Pro-Photo. The potential that Agfa Photo breached this obligation of good faith by conspiring with Agfa Corporation to assume all of the rights under the Lease Agreement and deprive Pro-Photo of obtaining any value whatsoever from the leased equipment precludes dismissal of this claim.

Agfa Photo asserts that because Pro-Photo admits it had no service agreement with Agfa Photo or Agfa Corporation and because the Lease Agreement contained no warranties regarding the state of the equipment that Pro-Photo's claim for breach of the implied duty of good faith and fair dealing must fail. However, this Court cannot conclude that, at this early stage of the litigation, the facts alleged by Pro-Photo do not support a claim that Agfa Photo breached an implied duty of good faith and fair dealing. Agfa Photo's motion to dismiss Pro-Photo's claim for breach of implied warranty of good faith and fair dealing will be DENIED.

     **5.**    **Breach of the Implied Warranty of Merchantability and Violation of Implied Warranty of Fitness for a Particular Purpose**

Pro-Photo states claims pursuant to Tennessee's version of the U.C.C. for breach of the implied warranty of merchantability and violation of implied warranty of fitness for a particular purpose. As stated *supra*, the parties expressly agreed to the application of Massachusetts law to the Lease Agreement. Therefore, Pro-Photo's claims based on Tennessee law must be DISMISSED with prejudice.

This Court will also consider whether Pro-Photo should be allowed to amend its complaint to assert violations of the breach of implied warranty of merchantability and violation of implied warranty of fitness for a particular purpose pursuant to Massachusetts' U.C.C. Massachusetts law provides that both the implied warranty of merchantability and fitness for a particular purpose may be excluded by agreement. *See* Mass. Gen. Laws ch. 106 § 2A-214. The applicable Massachusetts U.C.C. provision states:

> . . . to exclude or modify the implied warranty of merchantability or any part of it the language must mention 'merchantability', be by a writing, and be conspicuous. Subject to subsection (3), to exclude or modify any implied warranty of fitness the exclusion must be by a writing and be conspicuous. Language to exclude all implied warranties of fitness is sufficient if it is in writing, is conspicuous and states, for example, 'There is no warranty that the goods will be fit for a particular purpose'.

Mass. Gen. Laws ch. 106 § 2A-214(2). Subsection (3) to the provision states in part that "all implied warranties are excluded by expressions like 'as is' or 'with all faults', or by other language that in common understanding calls the lessee's attention to the exclusion of warranties . . ." Mass. Gen. Laws ch. 106 § 2A-214(3)(a).

Massachusetts law defines conspicuous to mean "a term or clause . . . so written that a reasonable person against whom it is to operate ought to have noticed it." Mass. Gen. Laws. ch. 106 § 1-201(10). When considering whether a contractual clause is conspicuous, Massachusetts courts "take[] into account the location of the clause, the size of the type, any special highlighting, such as boldface, capitalization or underlining, the clarity of the clause, and the sophistication of the contracting parties." *Logan Equipment Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1197 (D. Mass. 1990) (citing *Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.*, 445 F.Supp. 537, 547 (D. Mass. 1977)); *see also Boston Helicopter Charter, Inc. v.*

*Agusta Aviation Corp., B.L.*, 767 F.Supp. 363, 376 (D. Mass. 1991). In addition, "[c]onspicuous disclaimers or limitations on warranties will only be ignored when unconscionable." *Logan Equip. Corp.*, 736 F.Supp. at 1197 (citing *Marcil v. John Deere Industrial Equip. Co.*, 403 N.E.2d 430 (Mass. App. Ct. 1980)).

The Lease Agreement very clearly excludes all implied warranties of merchantability and fitness for a particular purpose. The exclusions are written in all capital letters and state:

> LESSEE LEASES THE EQUIPMENT "AS IS." LESSOR MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF, THE EQUIPMENT, ITS MATERIAL OR ITS WORKMANSHIP. LESSOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE . . .

[Court Doc. No. 1-3, Ex. A, Lease Agreement, ¶ 10]. As other courts interpreting Massachusetts law have found when interpreting similar clauses, this clause appears to be clear and sufficiently emphasized by capital letters. *See Boston Helicopter Charter, Inc.*, 767 F.Supp. at 376. The clause even uses the words "merchantability" and "fitness for a particular purpose." However, based on the pleadings, there remains the possibility that Pro-Photo's level of sophistication renders the exclusion of warranty clause not conspicuous pursuant to Massachusetts law. Further, although the Court recognizes that "the doctrine of unconscionability is not typically applied to commercial dealings between business entities," at this stage of the litigation, it is possible that the facts alleged by Pro-Photo might demonstrate that the Lease Agreement was unconscionable. *Id.* at 375; *see also* Mass. Gen. Laws ch. 106 § 2A-108 (providing for court refusal to enforce lease contract due to unconscionable clause). The Court recognizes that Pro-Photo did not enter into the Lease Agreement with Agfa Photo; however, Pro-Photo alleges that Agfa Corporation assigned its rights to Agfa Photo as a way to avoid any obligations under the

Lease Agreement. Therefore, this Court will allow Pro-Photo to amend its answer and counterclaim by July 5, 2007 to assert claims for breach of the implied warranty of merchantability and fitness for a particular purpose pursuant to Massachusetts law. However, if Pro-Photo fails to plead the elements of these claims in detail, including the specific allegations pertaining to unconscionability, this Court may dismiss these claims with prejudice.

### 6. Violation of Tennessee Consumer Protection Act

The TCPA protects consumers and business enterprises from unfair or deceptive trade practices. To state a prima facie case under the TCPA, a plaintiff must show "(1) defendant engaged in an act or practice that is unfair or deceptive as defined under the TCPA; and (2) plaintiffs suffered a loss of money, property, or a thing of value as a result of the unfair or deceptive act of defendant." *Scraggs v. La Petite Academy, Inc.*, No. 3:05-CV-539, 2006 WL 2711689 *4 (E.D. Tenn. Sept. 21, 2006); Tenn. Code Ann. § 47-18-109. Tennessee courts apply the particularity requirement of the Tennessee Rules of Civil Procedure 9.02 to claims brought pursuant to the TCPA. *Scraggs*, 2006 WL 2711689 at *4 (citing *Harvey v. Ford Motor Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999)). To satisfy this requirement a complaint must set forth specific fraudulent or deceptive acts rather than general allegations. *See e.g., Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990). The counterclaim fails to address the specific details of the alleged violations of the TCPA. As with Pro-Photo's fraud claim, the Court will not take any action regarding the TCPA claim at this time. Pro-Photo will have until July 5, 2007 to amend its answer and counterclaim to state its TCPA claim with particularity. If Pro-Photo fails to comply with Rule 9.02's requirement of particularity, this Court will dismiss the TCPA claim with prejudice.

### 7. Affirmative Defenses

This Court has already denied Agfa Photo's motion to strike Pro-Photo's affirmative defenses. Agfa Photo now moves to dismiss Pro-Photo's affirmative defenses pursuant to Federal Rule of Civil Procedure 12(b)(6). However, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is generally used as a defense to a claim for affirmative relief. The rule states that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Agfa Photo here attempts to dismiss affirmative *defenses* not a claim for affirmative relief.

At least one other district court has interpreted a motion to dismiss an affirmative defense as a motion for judgment on the pleadings and a "failure to state a legal defense to a claim" pursuant to Federal Rule of Civil Procedure 12(h)(2). *See United States v. Jackson*, No. CV 05-214-C-LMB, 2007 WL 1169695 *2 (D. Idaho April 19, 2007). Such a motion may be made "in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings." Fed. R. Civ. P. 12(h).

However, as this Court noted in its memorandum and order denying Agfa Photo's motion to strike, Federal Rule of Civil Procedure 7(b)(1) requires parties to "state with particularity" the grounds for any motion. Agfa Photo fails to address the legal invalidity of any of Pro-Photo's eighteen affirmative defenses, except as they may relate to Pro-Photo's counterclaims. This Court declines to engage in a separate analysis of all eighteen of Pro-Photo's affirmative

defenses to determine which ones, if any, fail as a matter of law.  Therefore, Agfa Photo's motion to dismiss Pro-Photo's affirmative defenses will be DENIED.

### III.    Conclusion

After reviewing the record and the applicable law, the Court concludes that Pro-Photo's motion to stay will be **DENIED**.  Plaintiff Agfa Photo's motion to dismiss Pro-Photo's counterclaim will be **GRANTED IN PART** and **DENIED IN PART**.  The Court will **DENY** Agfa Photo's motion to dismiss Pro-Photo's affirmative defenses.

A separate order detailing the disposition of each counterclaim will enter.


_____ */s/ R. Allan Edgar* _____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE